(No. 21393.— ▮▮▮▮▮▮)

THE ROSEHILL CEMETERY COMPANY, Appellee, *vs.* THE
CITY OF CHICAGO *et al.* Appellants.

*Opinion filed February 23, 1933—Rehearing denied April 5, 1933.*

12

WILLIAM H. SEXTON, Corporation Counsel, and TAR-NOPOL & FLAMM, ( CARL J. APPELL, and IRVING H. FLAMM, of counsel,) for appellants.

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee, the Rosehill Cemetery Company, on April 24, 1931, filed a bill in the superior court of Cook county for an injunction against appellants the city of Chicago and its officers, agents and attorneys, to restrain them from interfering with appellee and its employees and agents in improving and using a 25-acre tract of land in that city for cemetery purposes. A demurrer to the bill was overruled. Appellants the North Town Improvement Association, Henrietta P. Cross, Herman H. Braun and Peter C. Nedli applied for and were given leave to file, and did file, an inter-

vening petition. The prayer of the intervening petition was that appellee be enjoined and restrained from using the 25-acre tract as a burial place and be ordered to remove any bodies there buried. Answers to the bill and the intervening petition were filed by the city and an answer to the intervening petition was filed by appellee. After various amendments to these pleadings had been made and filed, replications were filed. The evidence was heard by the chancellor, and on December 19, 1931, after all the evidence had been heard and the cause had been taken under advisement, appellants filed a petition to be allowed to amend their pleadings and to introduce in evidence four ordinances passed by the city council of the city of Chicago on October 21, 1931, which was after the hearing had been closed. The prayer of this petition was denied, and on December 31, 1931, a decree was entered dismissing the intervening petition for want of equity and granting the prayer of the bill filed by appellee. This is an appeal from that decree.

The chancellor has certified that the validity of a municipal ordinance is involved in the decision of the case and that in his opinion the public interest requires that the appeal be taken to this court.

By an act of the General Assembly of February 17, 1857, all of fractional township 40 north, range 14 east, in Cook county, except sections 31, 32 and 33 and that part of section 30 lying south and west of the north branch of the Chicago river, was declared to be a township by the name of town of Lake View. By an act of February 11, 1859, appellee was incorporated and was authorized to acquire and hold not to exceed 500 acres of land in the township of Lake View for cemetery purposes, with authority to lay out, plat and ornament such land and to sell burial lots therein. By an act of February 16, 1865, entitled, "An act to incorporate a board of trustees for the town of Lake View, in Cook county," the supervisor, assessor and the commissioner of highways of said town were declared to

be *ex-officio* a board of trustees for the town of Lake View, and as such board were given power to cause local improvements to be made in the town by special assessments on the property benefited and power to regulate and license various occupations and to enact police regulations on certain named subjects. By an act of March 5, 1867, entitled, "An act to amend the 'Act to incorporate a board of trustees for the town of Lake View, in Cook county,' approved February 16, 1865," the township of Lake View was declared to be a municipal corporation by the name of town of Lake View, and the board of trustees was given various additional powers, among them the power "to fix and determine the location of any cemetery which any person or corporation may hereafter desire to establish or to open in the town of Lake View, and to fix the boundaries of any cemetery, and to prevent the interment of the dead in any place not now actually used as a cemetery or lying within the inclosure of a cemetery now established." In 1867 the board of trustees of the town of Lake View enacted an ordinance which provided that "no corpse shall be interred in any place within the limits of the town of Lake View not actually used as a cemetery on the fifth day of March, 1867, or lying within the enclosure of a cemetery not established on or before said day." The ordinance further purported to fix the boundaries of the cemetery of appellee and to limit the extent of said cemetery to about 60 acres of land. In 1869 the General Assembly passed an act approved March 29, 1869, entitled, "An act to amend the charter of the town of Lake View, in Cook county," (4 Private Laws of 1869, p. 311,) which provided that no new cemetery should be opened in the town of Lake View, or any existing cemetery in said town be enlarged beyond the limits actually inclosed or fixed by ordinance, except in the manner prescribed in the act. The act provided that any person or corporation desiring to establish a new or enlarge an existing cemetery should file an application with

the board of trustees of the town, supported by a petition of at least twenty voters of the town; that on such application being filed it should be the duty of the board of trustees to submit the question of granting the application to the legal voters of the town at the next annual election of town officers, and that if a majority of the legal voters voting at the election voted in favor of the proposition it should be lawful to open the new cemetery or enlarge the old one. In 1887 the town of Lake View was organized as a city under the Cities and Villages act by the name of city of Lake View, and in 1889 the city of Lake View was annexed to and became a part of the city of Chicago by proceedings under the general law relating to annexations to cities.

Immediately upon the passage and approval of the act of February 11, 1859, appellee accepted the terms of the charter granted to it and proceeded to purchase land in the township of Lake View, upon which it opened and established a cemetery. Prior to the passage of the above mentioned ordinance of 1867 by the board of trustees of the town of Lake View appellee acquired additional land to enlarge its cemetery. After that ordinance was passed and the act of 1869 above mentioned was in effect the town of Lake View filed a bill to restrain appellee from using lands owned by it outside the boundaries of its cemetery as fixed by the ordinance. It was held and decided in that case that the ordinance and act were invalid in so far as they attempted to prohibit the use by appellee for cemetery purposes of its lands acquired prior to the passage of the ordinance. (*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191.) Since the decision in that case appellee has continued to own and operate its cemetery, which is known as Rosehill Cemetery. From time to time it bought additional land, which was added to the cemetery and became a part thereof. At the time its bill was filed appellee owned and operated as a cemetery approximately 320 acres of land

located in the township of Lake View. That area was enclosed by fences. The northern boundary of the area is Peterson avenue, which is a paved street about one hundred feet in width. About 1928 appellee erected a concrete wall about seven feet in height along the northern boundary of this area to replace a wire fence that had been there for over thirty years. In the year 1902 appellee purchased a 20-acre tract of land north of Peterson avenue. Title to this land was held in the name of other persons until September 5, 1917, when the title was placed in the name of appellee. In the year 1919 appellee purchased a 5-acre tract of land which lies immediately east of the 20-acre tract. These two tracts of land are contiguous and are located in the township of Lake View north of Peterson avenue, by which they are separated from the grounds owned and used by appellee as a cemetery. So far as concerns these 25 acres of land, appellee has never made any attempt to comply with the ordinance of 1867 passed by the board of trustees of the town of Lake View or the act of March 29, 1869.

In 1918 appellee prepared a plat of the 20-acre tract as an addition to its cemetery. This plat was submitted to the superintendent of maps of the city of Chicago, and he refused to approve it because streets and alleys were not laid out through the tract. The plat was then filed with the recorder of deeds of Cook county, and he refused to record it because it had not been approved by the superintendent of maps. Appellee then filed a bill in the circuit court of Cook county against the city of Chicago, the superintendent of maps of the city and the recorder of deeds to compel the approval and recording of the plat. The city and superintendent of maps demurred to the bill, and after the demurrer was overruled did not plead or answer and the bill was taken as confessed as to them. The recorder filed an answer, and after a hearing a decree was entered as prayed for in the bill. No appeal or writ of error to review that

decree was prosecuted. In December, 1920, the plat of the 20-acre tract was recorded. In 1921 a plat of the 5-acre tract as an addition to appellee's cemetery was filed for record and recorded, and later in that same year a plat of the 20-acre tract and 5-acre tract as one tract and as an addition to appellee's cemetery was prepared, filed for record and recorded. Since that time other plats of the 25-acre tract, or portions thereof, have been prepared, filed for record and recorded in the office of the recorder of deeds of Cook county. On or about May 19, 1921, the bodies of four deceased persons were buried in the 25-acre tract, the burials having been authorized by appellee without compensation to it. In April, 1931, before its bill in this case was filed, appellee sold two burial lots in the 25-acre tract. The day following the sale of these lots the bodies of two deceased relatives of the purchasers of these lots were buried in the lots. The burial permits issued by the city of Chicago for the four burials in 1921 and the two burials in 1931 authorized interment in Rosehill Cemetery, and neither the city of Chicago nor its officials, prior to the burial of said bodies, had knowledge that they were to be buried in the 25-acre tract. Neither the city of Chicago nor its officials nor the intervening petitioners had any knowledge, prior to the filing of appellee's bill, that the four bodies buried in 1921 had been buried in the 25-acre tract. Shortly before the filing of appellee's bill it began the further improvement of the 25-acre tract for cemetery purposes. Among the improvements sought to be made was the erection of a cemetery building. An ordinance of the city of Chicago passed in 1922 provides that before erecting any building in the city a permit shall be obtained from the commissioner of buildings. Appellee made application for a building permit from the commissioner of buildings of the city of Chicago for the erection of this building, and although the plans for the building complied with all the municipal ordinances relating to buildings in the city, the

commissioner refused to issue the permit on the sole ground that appellee was not authorized to use the 25-acre tract for cemetery purposes. The commissioner referred to an opinion of the corporation counsel of the city written on December 30, 1930, to appellant the North Town Improvement Association, in which it was stated that since the 25-acre tract was not or could not be brought within the inclosure of Rosehill Cemetery, the use of this tract as a cemetery would constitute the establishment of a new cemetery, which appellee under its charter had no power to do. The city of Chicago, by its police officers and other officials, notified appellee that if it proceeded to construct the building without a permit it would arrest any persons working on the erection of the building, and also that it would take steps to prevent burials in the 25-acre tract and would cause the arrest of any persons proceeding with such burials.

Appellee's cemetery south of Peterson avenue extends along that avenue from Western avenue on the west to Ravenswood avenue on the east, a distance of about three-fourths of a mile. Its extent along Ravenswood avenue is about one-half mile. The distance from the southern boundary of the cemetery on the west to Peterson avenue is about three-fourths of a mile. There are no streets or alleys open to the public through it. Of the area south of Peterson avenue, (approximately 320 acres,) 134 acres have been sold for burial purposes, but a substantial part thereof is still unused and available to lot owners for future burials, approximately 98 acres are used for lakes, driveways, footpaths and buildings, and approximately 88 acres available for burial purposes remain unsold. The average rate of land sales for burial purposes by appellee for the past twenty years is about one and a half acres a year, and the average number of bodies buried in appellee's cemetery for the last ten years is 1685 a year. There are many cemeteries in the city of Chicago besides that of appellee having substantial portions of their lands unsold and available for burials,

and there are many other cemeteries outside of but near the city of Chicago. The 25-acre tract is bounded on the west by Oakley avenue (the second street east of Western avenue) and on the north by Granville avenue. On the east the north 303 feet are bounded by Leavitt street, and the eastern boundary of the remainder is a line 49 feet west of St. Anthony avenue. In 1902, when appellee bought the 20-acre tract, the surrounding area was sparsely populated and was occupied largely by farms and green-houses. There was no great increase in the population or change in the character of this district between that time and 1919, when the 5-acre tract was bought by appellee. During the years from 1922 to 1928, inclusive, there was extensive development in this neighborhood and many homes and apartment buildings were erected. In 1930 the population of the quarter-section of land in which the 25-acre tract is located was 4564, and this is about the present population of that area. In 1920 the population within the original limits of the township of Lake View was 276,000, and it is now about 350,000. On the west side of Oakley avenue, facing the western boundary of the 25-acre tract, there are fifteen buildings containing fifty-five apartments, and residences. On the north side of Granville avenue, between Oakley avenue and Leavitt street, there are seven buildings containing about seventy-five apartments. Immediately north of Granville avenue and east of Leavitt street, and extending north one block to Rosemont avenue, is a public school ground, on the north end of which is a public school building at which about 700 children attend school. On Leavitt street, facing the 25-acre tract, is a residence building, and about one hundred feet east of that street, on the south side of Granville avenue, is an apartment building containing three apartments. On the west side of St. Anthony avenue, bordering on the eastern boundary of the 25-acre tract, there are eight buildings containing twenty-eight apartments, and on the east side of that avenue, between Granville and Peter-

son avenues, there are three buildings containing eighteen apartments.

The first contention made .by appellants is, that appellee, under its charter, has no authority to use the 25-acre tract for burials because (1) that part of the charter that granted appellee authority to acquire, own and use for cemetery purposes not to exceed 500 acres of land in the township of Lake View was revoked, so far as further acquisition of land was concerned, by the provision of section 2 of article 11 of the constitution of 1870, which provides that "existing charters or grants of special or exclusive privileges, under which organization shall not have taken place, or which shall not have been in operation within ten days from the time this constitution takes effect, shall thereafter have no validity or effect whatever;" (2) the 25-acre tract, at the time it was bought by appellee, was, and now is, located in the city of Chicago and not in the town of Lake View; and (3) appellee's charter authorizes it to operate one cemetery, only, and the use of the 25-acre tract for burials will create a new cemetery distinct from appellee's cemetery south of Peterson avenue.

Appellee contends that neither the city nor the other appellants, the intervening petitioners, have the right to raise the question of the power of the appellee, under its charter, to use the 25-acre tract as a cemetery, but we do not deem it essential to pass upon that specific question. Even if it is true, as appellants contend, that the right to acquire and use for cemetery purposes not to exceed 500 acres of real estate in the township of Lake View, as granted in appellee's charter, was merely the grant of a privilege to acquire and use land to that extent and not an essential part of the contract between appellee and the State, it does not follow that such right was revoked by the provisions of section 2 of article 11 of the constitution of 1870. At the time that constitution was adopted appellee had organized as a corporation and was exercising the powers con-

ferred upon it by its charter, and the section of the constitution referred to did not operate to take away any of its charter powers. (*McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611.) By its charter appellee was authorized to acquire and use for cemetery purposes real estate in the township of Lake View. The township of Lake View, at the time the charter was granted to appellee, embraced all of fractional township 40 north, range 14 east, excepting three sections and a portion of another section. Whether or not by the later organization of this territory as the city of Lake View and its annexation to the city of Chicago the township of Lake View as a governmental subdivision ceased to exist is immaterial. The 25-acre tract was when acquired by appellee, and is now, located within the territory in which appellee was authorized by its charter to acquire and use land for cemetery purposes. By its charter the board of managers of appellee was given, among other powers, the power to receive subscriptions for the purchase of property and the laying out of grounds for cemetery purposes; to obtain possession of real estate for cemetery purposes such grounds as it might acquire, and to make and have recorded a plat of such grounds and of such additions thereunto as it may make at any time. In the charter the word "cemetery" appears several times, and the act also refers to the "inclosure" of the company. Appellants argue that since these words are used in the singular and nowhere in the charter appear in the plural form, a strict construction of the charter requires that it should be held to authorize appellee to operate but one cemetery. They say that the use of the 25 acres as a burial place will constitute the establishment of a new cemetery separate from the present cemetery of appellee and is without the powers granted to appellee by its charter. Whether or not the charter should be construed as appellants contend we do not deem it necessary to decide. The plats of the 20-acre tract, of the 5-acre tract and of the 25-acre tract

which were filed for record by appellee purport to be plats of an addition to Rosehill Cemetery. The section numbers on the plats follow consecutively the numbers of sections as shown on the plats of the cemetery property south of Peterson avenue. The 25-acre tract lies immediately north of Rosehill Cemetery as established before that tract was platted and is separated therefrom by Peterson avenue. We do not think that the fact that these lands are separated by a public street will necessarily make them two separate and distinct cemeteries any more than the fact that a public highway running through a farm necessarily makes it two separate and distinct farms, and in our judgment the chancellor did not err in his holding that the acquirement, improvement and use of the 25-acre tract for burial purposes does not constitute the creation of a new cemetery but constitutes an addition to the old cemetery within the meaning of the terms of appellee's charter.

It is the contention of appellants that the ordinance of the board of trustees of the town of Lake View passed in 1867, and the act of March 29, 1869, are valid and still in force and effect so far as the 25-acre tract is concerned and prohibit the use of such tract for cemetery purposes. The effect of the decision of this court in *Town of Lake View* v. *Rose Hill Cemetery Co. supra,* is the subject of much discussion in the briefs, but since we have reached the decision that the ordinance became inoperative and of no force and effect before title to any part of the 25-acre tract was acquired by appellee, and that the act of 1869 was invalid for reasons not mentioned in that case, we deem it unnecessary to comment on that decision. By the act of February 16, 1865, entitled, "An act to incorporate a board of trustees for the town of Lake View, in Cook county," power to enact police regulations on certain subjects, and other powers, were given to the supervisor, assessor and commissioner of highways of the town of Lake View, and they were declared to be *ex-officio* a board of trustees for

said town. That act did not have the effect of making the town of Lake View an incorporated town or a municipal corporation as distinguished from a township. (*People* v. *Village of Harvey,* 142 Ill. 573; *People* v. *Town of Thornton,* 186 id. 162.) The act of March 5, 1867, entitled, "An act to amend the 'Act to incorporate a board of trustees for the town of Lake View, in Cook county,' approved February 16, 1865," while it declared that the town of Lake View should be a municipal corporation, did not have the effect of making such town a municipal corporation or an incorporated town, because its title was not such that it could have that effect. Section 23 of article 3 of the constitution of 1848 provided that "no private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." The act of March 5, 1867, was a local act within the meaning of that provision of the constitution. (*People* v. *Wilcox,* 237 Ill. 421; *People* v. *Day,* 277 id. 543.) By the declaration in the act that it should be a public act the legislature could not evade the effect of that constitutional provision. (*Belleville and Illinoistown Railroad Co.* v. *Gregory,* 15 Ill. 20.) The creation of a new municipal corporation or incorporated town was a subject not expressed in the title of the act of February 16, 1865, and as the title of the act of March 5, 1867, simply expressed that it was amendatory of the act of February 16, 1865, that subject was not expressed in the title of the latter act, and therefore neither of said acts had the effect of making the town of Lake View a municipal corporation. (*Kennedy* v. *LeMoyne,* 188 Ill. 255; *Rouse* v. *Thompson,* 228 id. 522.) The act of March 29, 1869, was entitled, "An act to amend the charter of the town of Lake View, in Cook county." This act was purely a local act having for its subject matter the prohibition and regulation of the establishment of new and the extension of existing cemeteries in the town of Lake View. As we have already shown, the town of Lake View had not

been incorporated as a municipal corporation or incorporated town. It was a township, but as such was merely a governmental subdivision or quasi-municipal corporation and as such had no charter. We think it clear that the subject of prohibiting and regulating cemeteries in the town of Lake View, which was the subject matter of the act of March 29, 1869, was not expressed in its title, and that the act for that reason was unconstitutional and void. Therefore that void act cannot have the effect to prevent appellee from using the 25-acre tract as a cemetery.

As we have heretofore stated, in the year 1887 the territory embraced within the township of Lake View became the city of Lake View by incorporation under the Cities and Villages act, and in the year 1889 the city of Lake View was annexed to the city of Chicago by proceedings under the general law relating to annexations to cities. The chancellor held that upon the incorporation of the city of Lake View and the annexation of said city to the city of Chicago the ordinance of 1867 enacted by the board of trustees of the town of Lake View was repealed and annulled. Whether or not by the organization of the territory embraced within the boundaries of the township of Lake View as a city the ordinance was repealed we do not decide. It is our opinion, however, that the ordinance, if valid when passed and if in force after the organization of the city of Lake View, became inoperative and of no further force and effect when the city of Lake View was annexed to and became a part of the city of Chicago. By the annexation of the city of Lake View there was to that extent a new organization of the city of Chicago. (*People* v. *Ellis*, 253 Ill. 369.) The city of Lake View ceased to have existence as a municipal corporation, and the ordinances of the city of Chicago extended to and became operative over the annexed territory immediately upon the annexation. (*People* v. *Chicago Telephone Co.* 220 Ill. 238; *Chicago, Rock Island and Pacific Railway Co.* v. *City of Chicago*, 143 id. 641.) By sec-

tion 18 of "An act to provide for the annexation of cities, incorporated towns and villages, or parts of same, to cities and incorporated towns and villages," approved April 25, 1889, all ordinances of a municipal corporation annexed to a city, town or village whereby the licensing of dram-shops is prohibited or regulated, are declared to remain in full force and effect after the annexation until the voters of the territory affected by such ordinances consent to the repeal of such ordinances. This provision of that statute has been held to be valid and effective to continue in operation and force and effect ordinances of annexed municipal corporations relating to the licensing of dram-shops. (*People* v. *Cregier*, 138 Ill. 401; *Swift* v. *Klein*, 163 id. 269; *People* v. *Harrison*, 191 id. 257.) At the time the city of Lake View was annexed to the city of Chicago there was no statutory provision that any general ordinances of an annexed city relating to any subject other than dram-shops should remain in force and effect after it was annexed to another city, town or village. The ordinance of 1867 relating to cemeteries was purely a police regulation. When the territory of the township of Lake View became organized as a city the powers that had been delegated to the board of trustees of the town of Lake View to enact ordinances relating to local improvements and other subjects ceased to exist in such board and such matters were thereafter within the control of the city council of the city of Lake View. When the city of Lake View was annexed to the city of Chicago the powers theretofore vested in the city council of the city of Lake View became vested in the city council of the city of Chicago, the city of Lake View ceased to exist as a municipal corporation, the ordinances of the city of Chicago extended to and became effective in the annexed territory immediately, and all ordinances of the city of Lake View not saved by express statutory provision and which were not in the nature of contracts with persons or corporations became inoperative and of no further force and

effect. We hold that the ordinance of the board of trustees of the town of Lake View was not when appellee's bill was filed, and is not now, of any force and effect to prevent the use by appellee of the 25-acre tract as a burial place.

Appellants contend that the evidence shows that the use of the 25-acre tract as a burial place would constitute a nuisance, and that the city, under its general police powers to prevent and abate nuisances, had the right to prevent burials in said tract. By section 75 of article 5 of the Cities and Villages act city councils are given the power to declare what shall be a nuisance and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist. By section 78 of that article of the act city councils are given power to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease; and by section 79 they are given power to establish and regulate cemeteries within or without the corporation, and acquire lands therefor by purchase or otherwise, and cause cemeteries to be removed, and prohibit their establishment within one mile of the corporation. Prior to the filing of appellee's bill there had been no action taken by the city council of the city of Chicago, by ordinance or otherwise, to declare the use of the 25-acre tract as a cemetery to be a nuisance or to prohibit its use for that purpose. There is absolutely no proof that the use of the tract as a cemetery will violate any ordinance or regulation of the city concerning public health or the suppression of disease, and there is also a total absence of proof that the use of said tract for cemetery purposes will be in anywise detrimental to the health of the citizens of the city of Chicago. We hold that under the evidence there is no basis for the contention that the interference of the officers of the city of Chicago with the use of this tract by appellee as a burial place was justified under the general police power of the city to prevent and abate nuisances. That the use of this

tract as a cemetery would not constitute a public nuisance was impliedly recognized in the opinion of the corporation counsel of the city of Chicago to the North Town Improvement Association, dated December 30, 1930, above mentioned, the concluding paragraph of which is as follows: "In view, however, of the fact that the cemetery company is evidently disposed to litigate this matter, and in view of the further fact that this is largely a private controversy, in which the public is only incidentally interested, we would suggest that the neighboring property owners specially interested take such steps as they may deem appropriate to protect their rights in the matter."

It is further contended that the court should have found that the use of the 25-acre tract as a cemetery would constitute a private nuisance and should have enjoined its use for that purpose on the petition of the intervening petitioners. Intervening petitioner the North Town Improvement Association is an incorporated association which has for its purpose the fostering of community improvements and community welfare in that part of the city where the 25-acre tract is located. Its members are owners of property located in that territory and are tax-payers. The other intervening petitioners are owners of property near the 25-acre tract. Appellants do not contend, and there is no evidence to establish, that the soil of that tract of land is not well adapted to cemetery purposes; that there are, or will be, any emanations of noxious fumes or disagreeable odors or any underground seepage from said tract; that there are, or will be, any disturbing or disagreeable noises in connection with the use of that tract as a cemetery, or that such use of that tract will be in anywise detrimental or deleterious to the health of persons residing in the neighborhood, except to the extent that it might psychologically constitute a depressing influence. Appellants do contend, however, and introduced evidence to prove, that the use of the tract as a cemetery would lower the market and rental value of

the property in the immediate neighborhood of the tract by making such property less desirable for residence purposes. Appellee introduced evidence to show that the desirability of the neighboring property for residence purposes would not be lessened by its improvement and use of this tract for a burial place. We do not deem it necessary to set out or comment on this evidence other than to say that the evidence that the value of neighboring property will be decreased by the use of this tract as a cemetery is not based to any extent whatever on any element that would influence the physical senses to make residence on such property less desirable, but solely on the fact that the nearness of a cemetery might, and probably would, be offensive to the æsthetic sense of neighboring residents. The evidence for appellee shows that its cemetery is one of the best-kept cemeteries in the United States; that its plans for the improvement and use of the 25 acres contemplate the setting out of trees and shrubbery to make the tract as beautiful as possible, the prohibition of the erection of head-stones or monuments coming above the level of the ground, and the refusal to sell burial lots therein to any purchaser unless he makes contribution to a perpetual-care fund, to be used for the up-keep of the premises. That a cemetery is not a nuisance *per se* is well established by the decisions of this court. (*Village of Villa Park* v. *Wanderer's Rest Cemetery Co.* 316 Ill. 226; *Town of Lake View* v. *Rose Hill Cemetery Co. supra; Town of Lake View* v. *Letz,* 44 Ill. 81.) The right of local legislative bodies to regulate and prohibit the use of land for a cemetery is based upon the ground that it may endanger the lives and health of the people in the locality, and not upon the grounds that a cemetery is not agreeable to contemplate, that it annoys nervous or superstitious persons or makes the vicinity less attractive for dwelling or business places, thereby lessening the value of adjoining lands. Before it can be abated or its

use enjoined it must be clearly and satisfactorily proven to be a nuisance. (*Village of Villa Park* v. *Wanderer's Rest Cemetery Co. supra; Sutton* v. *Findlay Cemetery Ass'n,* 270 Ill. 11.) A nuisance is something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable. (*Wahle* v. *Reinbach,* 76 Ill. 322; *Wente* v. *Commonwealth Fuel Co.* 232 id. 526; *Oehler* v. *Levy,* 234 id. 595.) It is our conclusion that the evidence does not establish that the use of the 25-acre tract by appellee as a cemetery will constitute either a public or a private nuisance, and that the court did not err in dismissing the intervening petition for want of equity.

It is contended by appellants that since appellee has sufficient land in its inclosure south of Peterson avenue available for burial purposes to meet all reasonable requirements for such purposes for many years, the use of the 25 acres as a burial place is not reasonably necessary; that the loss of value of property and the inconvenience to the persons owning property in the neighborhood of the 25 acres if permitted to be used as a cemetery will be far greater than any loss to appellee if it is denied the right to use such tract as a burial place, and that, therefore, the court should have refused to issue an injunction on the bill of appellee. It is stated that the relative inconvenience and injury to each side should be considered before an injunction issues, and the cases of *Cleveland* v. *Martin,* 218 Ill. 73, and *Lloyd* v. *Catlin Coal Co.* 210 id. 460, are cited in support of this proposition. Aside from the fact that appellee by its bill sought no relief, by injunction or otherwise, against the intervening petitioners, this is not a case for the application of the rule of balancing the relative inconvenience on one side and the injury on the other. That rule is not applied where the existence of a private right and the violation of it are clear. (*Wente* v. *Commonwealth Fuel Co. supra.*) The cases cited by appellants are distinguished and explained in the *Wente case.*

It is further contended that the injunction prayed for by appellee should have been denied because appellee did not come into court with clean hands—because it allowed the neighboring property owners to improve their property by the expenditure of large sums of money under the belief and understanding that the tract would not be used as a cemetery. It is pointed out that after appellee acquired the 20-acre tract, title thereto was not placed in appellee's name for many years; that appellee allowed the tract to be used for farming purposes and paid taxes thereon, although by the provisions of its charter it was not required to pay taxes on its land. The charter of appellee does not exempt all of its property from taxation, but only such part thereof as is "actually used * * * for burial purposes or for the general uses of lot holders or subservient to burial uses and which shall have been platted and recorded as cemetery grounds." The first plat of the 20-acre tract as an addition to appellee's cemetery was recorded in December, 1920, and of the 5-acre tract in 1921. The record shows that the last taxes paid on the 25-acre tract were the taxes of 1920. The intervening petitioner Henrietta P. Cross owns property on Oakley avenue opposite the 25-acre tract. She has owned the property since 1916 but the building thereon was not erected until 1923. The intervening petitioner Herman H. Braun bought his property in 1925, and the intervening petitioner Peter C. Nedli acquired title to his property in 1928. Only one witness for the intervening petitioners, Margaret Pickham, who owned property in the neighborhood of the 25-acre tract, acquired title to such property prior to 1921. This witness' property is located one block west of the 25-acre tract, and it was not improved until the year 1922.

Reference is made by appellants to the testimony of three witnesses who talked with employees of appellee about the intended use of the 25-acre tract. One of these witnesses talked to a salesman of appellee in 1926 about

buying a burial lot north of Peterson avenue, and he told her they were not selling lots there and that they had "plenty of ground in the main cemetery to last for seventy-five years." Another witness testified that in 1930 the assistant superintendent of appellee told him that the 25 acres would be used for a tool-yard. The third witness, a real estate broker, testified that an officer of appellee in 1927 told him, in response to his inquiry as to whether the tract was for sale, that they were not ready to put it on the market. The evidence shows that the building development in the neighborhood of the 25-acre tract did not begin until the latter part of 1922 or 1923. It also shows that the persons active and interested in selling property in the neighborhood fostered rumors to the effect that the 25 acres would not be used for a cemetery, and that in 1924 or 1925 appellee caused a large sign, reading, "Property of Rosehill Cemetery—No Trespassing," to be placed on that tract. At the time the improvements of the intervening petitioners on their property were made, and at the time most of them bought their property, there were on record plats of these 25 acres as an addition to appellee's cemetery. While the intervening petitioners may not have had actual notice of those plats they did have constructive notice of them, as they were a matter of public record. A contract for the sale of real estate may be recorded, and when recorded the record gives notice to all the world of the rights of the parties under the contract. (*Miller* v. *Akin*, 350 Ill. 186.) The original plat of Rosehill Cemetery, the plats of the 20-acre tract and of the 5-acre tract, and the plat of the 25-acre tract north of the original plat of the cemetery, were all recorded, and the appellants, and all other persons claiming rights in neighboring lands or lots, were chargeable with notice of the recorded plats and the entire contents thereof. It cannot be said that appellee was guilty of any bad faith or inequitable conduct toward the intervening petitioners, or that it informed them, or encouraged

them in the belief, that the 25 acres would never be used as a part and parcel of its cemetery for cemetery purposes.

It was contended by appellants in the lower court that the use of the 25-acre tract as a cemetery was in violation of the zoning ordinance of the city of Chicago. The chancellor found that the zoning ordinance by its provisions authorizes the use of the 25-acre tract for cemetery purposes. Appellants do not challenge that finding in this court and make no contention that the use of the tract as a cemetery is a violation of that ordinance. Appellants also contend that various legal conclusions contained in the findings of the court are erroneous. It is unnecessary for us to discuss these questions, because it is immaterial what reasons the court stated in the decree for rendering it, if the findings of fact supported by the evidence lead, as a matter of law, to the same conclusion. An appellate court will not reverse a decree which correctly pronounces the judgment of the law upon the facts because an improper reason is given for the conclusion. A decree which is correct in the law should be affirmed, whether the reasons recited for it which are no essential part of the decree are or are not erroneous. *VonPlaten* v. *Winterbotham,* 203 Ill. 198.

Appellants further argue that it was error to grant an injunction to restrain the city and its officers and agents from interfering with the erection of the building on the 25-acre tract when appellee had not obtained a permit to erect the building, as required by ordinance. It is contended that appellee's remedy was by *mandamus* to compel the issuance of the permit. Appellants in their brief state that the main point of this litigation is to test appellee's right to establish a cemetery on the 25-acre tract. It was stipulated that appellee made proper application for a permit to erect the building, that the plans for the building complied with all the provisions of the building code of the city of Chicago, and that the permit was refused on the sole ground that appellee had no right to use the tract for cemetery pur-

poses. As we have shown, appellee did have the right to use this tract for cemetery purposes, and it follows that there was no legal justification for the refusal of the building permit. Its issuance under the facts of this case is a mere matter of form. Where a court of equity has obtained jurisdiction for any purpose, it is empowered to determine all questions involved in the case and do complete justice. (*King* v. *King,* 215 Ill. 100.) It is the aim of equity to administer complete relief in one suit although to do so requires an investigation of several matters and relief consisting of different elements. The chancellor should in a single suit investigate and determine all questions incidental to the determination of the main controversy and will grant all relief incidental to the accomplishment of the main object of the bill. (*King* v. *Rice,* 285 Ill. 123; *Anderson* v. *Anderson,* 293 id. 565.) The main object of appellee's bill was to prevent the city and its officers and agents from interfering with its use of the 25 acres as a cemetery. To prevent their interference with the erection of the building was incidental to the main relief sought. We do not hold that appellee had a right to erect a building on the tract without compliance with the ordinances of the city relating to buildings. The record shows that the plans for the building complied with all requirements of the ordinances of the city relating to buildings, and the permit for the erection of the building was refused without legal justification. Appellee had a right to have the permit issued to it, and the city should have issued and delivered such permit to appellee. Under these circumstances it was not error for the court to issue the injunction against interference with the erection of the building in order that complete justice might be done between the parties.

After the proofs had been closed and the case taken under advisement by the chancellor, appellants filed a petition to open the case for the introduction in evidence of four ordinances passed by the city council of the city of Chicago

on October 21, 1931, after the hearing on the case had been completed. Three of these ordinances related to the opening of streets through the 25-acre tract. The fourth ordinance provided that it should be unlawful to establish, enlarge or alter the boundaries of any cemetery within the limits of Chicago, or within one mile thereof, unless first authorized by an ordinance of the city council, and also that it should be unlawful to establish any cemetery or to inter any body in any portion of the northwest quarter of section 6, township 40 north, range 14 east of the third principal meridian, which is the quarter-section within which the 25-acre tract is situated. The prayer of the petition was denied. It is contended that the court erred in refusing to allow the introduction of this evidence. The matter of the order of proof and allowing a case to be opened up for taking further evidence rests in the sound judicial discretion of the court and should not be interfered with except for clear abuse, as where its effect is to countenance or aid trickery or unfairness on the part of counsel in the trial of a case. (*People* v. *St. Louis, Iron Mountain and Southern Railway Co.* 278 Ill. 25; *Brelsford* v. *Community High School District*, 328 id. 27.) We hold that there was no abuse of discretion on the part of the chancellor in refusing to allow the case to be opened for the introduction in evidence of these ordinances. By its decree the court limited its injunction to interference with the erection of the building or the use of the tract as a cemetery "by virtue of any right or authority which the said city of Chicago may have had or claimed to have prior to the commencement of this proceeding."

The decree of the superior court is affirmed.

*Decree affirmed.*