Linn Farms, Inc., an Illinois Corporation, Plaintiff-Appellant, v. Max Edlen, et al., Defendants-Appellees.

Gen. No. 11,041.

Fourth District.

July 15, 1969.

Rehearing denied and opinion modified September 17, 1969.

Claudon and Elson, of Canton (James J. Elson, of counsel), for appellant.

Bellatti, Fay and Bellatti, of Jacksonville, for appellees.

As Modified on Denial of Petition for Rehearing.

SMITH, J.

This is a suit to quiet title to land in Morgan County and to remove the claim of the defendants to its ownership as a cloud on plaintiff's title. Defendants filed their affirmative answer asserting that they had acquired title to the precise property in question through accretion. The trial court decided that issue in favor of the defendants and entered an appropriate judgment. The plaintiff contends that it is a well recognized rule that the burden of proving the equitable defense of title by accretion as an affirmative defense is on the defendants. Pascal P. Paddock, Inc. v. Glennon, 32 Ill2d 51, 203 NE2d 421. Such is the rule. Such was the quantum of proof required. Such was the trial court's decision.

The defendants were the unquestioned owners of certain lots in Lake View Addition to the Village of Meredosia lying east of Meredosia Lake and in Section 15.

The land in controversy lies west of these lots and east of Meredosia Lake as it now exists. The western boundary of Lake View Addition is the section line between Sections 15 and 16. Plaintiff asserts ownership through a 1959 quitclaim deed describing, "All that part of Sec. 16 lying East of the Illinois River." The original or initial deed from Trustees of Schools to its predecessor in title was a deed recorded in 1893 to all land covered by Meredosia Lake in that part of Section 16 lying east of lots 1, 2 and 3, and west of lots 4–13, inclusive. By way of explanation, these lots are not the Lake View Addition lots owned by defendants. Their lots are in Section 15 to the east of the section line, and coterminous with these lots, as we have said. The controversy centers around a two to five-acre tract which is brush, fill-ground and swampy, and is designated as lot 12 on the plat below.

It should be here noted that the plaintiff claims its title from the Trustees of Schools to Frank H. Ray and that deed conveyed land *west* of school lot 12 and did not and does not cover the land in controversy. It should also be noted that this general area is back in the courts for its second visit. In Trustees of Schools v. Schroll, 120 Ill 509, 12 NE 243, the record failed to show the size of the lots and whether or not any part of them were in fact the western or the eastern boundary of Meredosia Lake. In that instance, the court held that the evidence offered by the defendants-appellees was insufficient to establish their title either on the theory that they were riparian owners or on the theory that Meredosia Lake was a stream of water and their deeds conveyed title to the center of the stream. It thus appears that Meredosia Lake has been judicially determined to be a lake for more than 80 years with its boundaries as much in doubt then as they are now and the record ownership of its surrounding territory as much in limbo then as it is in this record today. It is clear from this record that

until the plaintiff acquired the property in 1959 defendants' title was unquestioned. Since that time, each side has built a fence of some description or another whose precise location is not shown in this record and each fence was destroyed by the other or his predecessors in title or by parties unknown.

The original land survey of this area shows the meander line of the east shore of a body of water termed "navigable

lake" extending into the southwest quarter of section 15 in the area where Lake View Addition is now platted. This same situation is demonstrated by an old Atlas dating back to 1872. Lake View Addition to Meredosia was platted in 1913. That plat makes no reference to the lake nor does its deeds. Both sides agree that Meredosia Lake has receded from its original occupancy, wherever that may have been, and the basic issue in this case is to relate such recession to such legal descriptions as appear in the record. It is further clear that at the present time the eastern part of Meredosia Lake is a ditch or chute located from 300 to 400 feet west of the section line between Sections 15 and 16. The area between this section line and the water is the area in controversy in this matter. In the late 20's or early 30's the Rotary Club of Jacksonville maintained an outing camp in Lake View Addition. The Knights of Pythias also had a similar camp on a lot owned by one of the defendants and activities conducted on these various lots included camping, picnics, recreational activity, swimming, boating and beer parties. At least a part of the area was used for Boy Scout and Girl Scout camps. Concrete walkways ran from the west edge of the Lake View lots several feet beyond their western extremities and apparently joined the lake with laterals running from the sidewalks to boat docks and ready access to boating and swimming was available. Both possession and access to the shores of Meredosia Lake was thus available to the owners of the Lake View lots. There is no evidence that originally or now there was any intervening ownership over which access to the water was obtained.

The trial court in its memorandum opinion found that the defendants were riparian owners, that there had been a gradual withdrawal or recession of the waters adjoining their land, that artificial acts in the changing of locks on the Illinois River and other engineering changes may or may not have affected this recession of the waters, but if so, it does not affect their rights to accretion. In so

doing, the court relied upon City of Peoria v. Central Nat. Bank, 224 Ill 43, 56, 79 NE 296, 299, where it is stated:

> "The whole doctrine of accretions rests upon the right to access to the water, and it must be convenient access. The right to preserve his contact with the water is one of the most valuable of a riparian owner."

This same doctrine was respected in a recent decision of the United States Supreme Court in Hughes v. State of Washington, 389 US 290, 19 L Ed2d 530, 88 S Ct 438, in which the court stated in substance that a long and unbroken line of decisions established that the grantee of lands bounded by a body of navigable waters acquires a right to any natural and gradual accretion formed along the shore and that this rule is essential to avoid litigation challenging the location of the original waterlines. In Fuller v. Shedd, 161 Ill 462, 44 NE 286, this same doctrine is applied to lakes and ponds regardless of how large or small they may be. In this connection, it should be observed that the original U. S. Survey meandered the boundary of Meredosia Lake. In the case just cited, the Supreme Court stated at p 494 of the Illinois citation:

> ". . . Where accretions come to such riparian proprietors they shall take to the water's edge, and follow the recession of waters to their edge. Their lines and bounds are thus determined and are certain. This rule recognizes the riparian proprietor's rights to the fullest extent. The value of his riparian rights are preserved to him. If, as in many such lakes, there is much depth of water on one side and very shallow on the other, and in process of time recession of waters on the shallow side passes beyond the lake's center, the owner on that side still goes to the water's edge, and the proprietor on the other side should not come in between the lake and such

proprietor after the waters have receded beyond the center. Where there is depth of water the lake still exists, and one proprietor is not deprived of the benefit of his riparian rights."

■ ■ Applying these rules, we must conclude that the defendants and their predecessors in title have had access to this lake and used and utilized it since 1913, that the original survey suggests that the borders of the lake were either adjacent to or perhaps covered a part of the Lake View lots, that the use made of the area from the late 20's until 1959 points to undisputed access to and use by the defendants of the property here in question. The trial court having made its determination, we cannot set it aside unless it is clearly and manifestly against the weight of the evidence or is based on obvious error. Gillespie v. Gillespie, 70 Ill App2d 38, 216 NE2d 462.

■ ■ In addition, while the trial court did not pass on the question of title by adverse possession, it was pleaded and it is quite evident that for some 30 years or more the owners of the Lake View lots have claimed the right of access to and the use of this lake, have used it and that the record is silent as to any objection to or claim adverse to such right until the plaintiff came into the picture in 1959. The facts in this record, therefore, would have supported a finding by the trial court of title by adverse possession in the defendants. While the appellant will be considered to have waived for the purposes of review a defense not raised in the trial court, an appellee may urge any point in support of the judgment on appeal even though it is not directly ruled on by the trial court so long as the factual basis was before that court. Shaw v. Lorenz, 42 Ill2d 246, 246 NE2d 285. Such is the situation here. Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.

300

Plaintiff suggests on rehearing that our failure to note various other and prior conveyances in its chain of title somehow affected the result we reached. On the contrary, our opinion assumes, without deciding, that plaintiff had title. We do not decide such because whatever the state of its title, it is as of nothing when placed against the riparian rights of defendants.

Plaintiff suggests further that accretion is inapposite in our context because defendants' deeds do not include Meredosia Lake as one of its boundaries, and in permitting this doctrine to defeat their claim, we are in effect overruling Bristol v. Carroll County, 95 Ill 84 (1880). We are doing no such thing. Bristol denies acquisition of title by accretion where the land had been originally separated from the water's edge. At least we read it that way and for that reason we think our holding is in harmony with that case. There is no requirement that a part of the description of these lots must include this lake for the doctrine to apply.