LELAND H. HASSELBRING *et al.*, Plaintiffs-Appellees, v. IRENE LIZZIO, Defendant-Appellant.

Third District   No. 3—01—0393

Opinion filed July 22, 2002.—Rehearing denied August 13, 2002.

Charles E. Ruch, Jr. (argued), of Bourbonnais, for appellant.

Ronald E. Boyer (argued), of Boyer & Thompson, Ltd., of Watseka, for appellees.

JUSTICE SLATER delivered the opinion of the court:

Defendant, Irene Lizzio, appeals from a circuit court judgment granting a permanent injunction in favor of plaintiffs, Leland Hasselbring, Jane Hasselbring, and Mike Balding. The injunction prevents defendant from interfering with plaintiffs' riparian rights in the use of a nonnavigable pond. We allowed Irene's motion for substitution of parties whereby she was substituted for Carl Lizzio, her husband, who died while the appeal was pending. Defendant claims on appeal that the circuit court erred in granting the injunction and denying defendant's counterclaim to quiet title and enjoin plaintiffs from using the pond. We affirm.

## FACTS

The pond in question lies near Del Rey in Iroquois County and sits on land owned by defendant. Defendant bought the property on which the pond sits in 1993. It is bordered on the north by property owned by Mike Balding and on the south by property owned by Leland and Jane Hasselbring. The following diagram, not drawn to scale,

indicates the approximate location of each party's property in relation to the pond:

Mike Balding purchased his parcel of land in 1985. He subsequently built a cabin facing the pond, approximately 60 feet from the water's edge, in which he now lives. Balding installed a floating dock onto the water extending away from the shoreline closest to his cabin. He used the dock to fish and at one time had a boat he used to fish on the pond. Balding believed that his property bordered the pond.

Leland and Jane Hasselbring bought their property in 1996. It is a wooded tract with a stream on the north part of the property which must be crossed to access the pond. A bridge exists for that purpose and was in place when the Hasselbrings came onto the property in 1996. The Hasselbrings maintained the southern bank of the pond and used the bridge to access the pond to fish and canoe.

In approximately 1987 Mike Balding drained the pond in order to use a bulldozer to deepen and widen the pond. He testified that he did this to maintain and "improve the pond" because of the top soil and silt that had accumulated over time in the pond, decreasing its size and depth. Balding testified that nobody objected to his actions in bulldozing the pond. Balding also built a wooden dock extending on the pond that Carl Lizzio later objected to as being on Lizzio's

property. Balding did not use or maintain this dock and let it deteriorate because of Lizzio's objection.

In July 1997 Carl Lizzio began digging a ditch intended to drain the pond for the purpose of creating a wildlife refuge. When Leland Hasselbring and Mike Balding became aware of Lizzio's intentions, they objected and indicated that they didn't think Lizzio had the right to take such action to which Lizzio replied, "Well, I own the water. This is my pond. This is my water." When Hasselbring suggested all of them work together to decide what should be done with the pond and all share the cost, Lizzio declined the offer.

Plaintiffs filed a complaint July 2, 1997, to prevent defendant from draining the pond. Plaintiffs claimed that they owned property riparian to the pond and that defendant intended to interfere with their ability to use the pond. The circuit court issued a temporary restraining order July 2, 1997, and granted a preliminary injunction on July 10, 1997. Defendant filed a two-count counterclaim against plaintiffs on June 26, 1998, seeking to enjoin them from trespassing on defendant's land and to quiet title to the land against plaintiffs' claimed interest. A bench trial was held.

Carl Krause, a licensed surveyor, testified for plaintiffs that he was contacted in 1993 by James Maddin, predecessor in title to Carl Lizzio's property. Maddin gave him the legal description of the land later conveyed to Carl Lizzio, from which he was instructed to make a survey. Krause's survey located the southern line of what is now the Lizzio property based on that legal description. The pond extended significantly beyond that line, which is also the north line of the Hasselbring property. Upon cross-examination, Krause indicated that he had not inquired into previous documents in the chain of title because he had not been instructed to do so. Rather, the sole source for his survey had been the legal description he had been given by Devine. He admitted that the southern line of the Lizzio property was not the true southern line but that the line found by surveyors Rex Bradfield and David Tyson was correct. The correct line was south of Krause's line, very close to the edge of the pond. Krause maintained that the rest of his survey was correct.

Testimony varied as to where the edge of the pond was located. Bradfield testified that at the times he had measured its location, it was a foot to a foot and a half from the Hasselbrings' property line. He also testified that in his opinion the water level would not rise above that level without extreme circumstances, such as heavy rainfall or overflow from the nearby stream. Contrarily, surveyor Tyson testified that although he had seen the water level in the same place as Bradfield, it was obvious that the bank of the pond was "definitely on

Mr. Hasselbring's property." Mike Balding testified that during the time he owned his property he had seen the pond water at higher levels than it was at the time of trial. Carl Lizzio testified that he had never seen it higher than it was at the time of trial. Several photographs were admitted into evidence showing the edge of the pond.

In regard to Balding's property, Krause testified that according to his survey, the pond extended beyond the northern line of the Lizzio property onto the property owned by Mike Balding. Conversely, defendant's witness Rex Bradfield testified that Balding owned less than the 3.5 acres he claimed to own. He based this opinion on an examination of the trail of deeds of Balding's property extending back to 1895. The original 1895 deed, and various later deeds, contain a reference to 1.5 acres in contrast to the more extensive metes and bounds description. Bradfield's opinion was that Balding actually owned only 1.5 acres and the southern border of his property was approximately 120 feet away from the northern edge of the pond.

The trial court issued an opinion on March 13, 2001, and a final judgment on May 4, 2001. The judgment was for a permanent injunction preventing Carl Lizzio from interfering with plaintiffs' use of the pond or altering its water level. The court, according to its written opinion, found that plaintiffs' lands were riparian to the pond. The court indicated that it had carefully weighed the credibility of all witnesses and all the evidence presented in reaching its conclusion. The court found that there was sufficient evidence showing that the southern edge of the pond extended onto the Hasselbrings' property. The court also accepted the Krause survey over the Bradfield survey with respect to Balding's property. The court also found that defendant's reliance on a deed dating from 1895 was precluded because of sections 13—114 and 13—118 of the Code of Civil Procedure (735 ILCS 5/13—114, 13—118 (West 2000)). The court also indicated that the plaintiffs and their predecessors in title had been using the pond for such a long period of time without apparent objection that the doctrine of acquiescence applied to the facts here.

## ANALYSIS

■■ ■ It is well established in Illinois that each owner of the bed of a private nonnavigable lake has the right to the reasonable use and enjoyment of the surface water of the entire lake. *Beacham v. Lake Zurich Property Owners Ass'n*, 123 Ill. 2d 227, 526 N.E.2d 154 (1988). We will not overturn the grant of a permanent injunction unless it is contrary to the manifest weight of the evidence. *Lucas v. Peters*, 318 Ill. App. 3d 1, 15, 741 N.E.2d 313, 325 (2000). The opposite result

must be clearly evident. *Harper v. Missouri Pacific R.R. Co.*, 282 Ill. App. 3d 19, 667 N.E.2d 1382 (1996).

We first examine plaintiffs Leland and Jane Hasselbring's claim to riparian rights. It is clear that the southern line of the Lizzio property is where surveyors Rex Bradfield and David Tyson determined it to be. The dispute, however, is where the edge of the pond is in relation to this line and where it has been in the past.

■ The doctrine of accretion applies when property riparian to a body of water has a shoreline that recedes over time. *Linn Farms, Inc. v. Edlen*, 111 Ill. App. 2d 294, 250 N.E.2d 681 (1969). The riparian owner maintains his access even after the water recedes. "The whole doctrine of accretions rests upon the right of access to the water, and it must be convenient access. The right to preserve his contact with the water is one of the most valuable of a riparian owner." *City of Peoria v. Central National Bank*, 224 Ill. 43, 56, 79 N.E. 296, 299 (1906). The same doctrine was reiterated more recently by the United States Supreme Court in *Hughes v. State of Washington*, 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967), in which the Court stated in substance that a long and unbroken line of decisions established that the grantee of lands bounded by a body of navigable waters acquires a right to any natural and gradual accretion formed along the shore. This rule is essential to avoid litigation challenging the location of the original waterlines. *Hughes*, 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438. This doctrine applies to lakes and ponds regardless of how large or small they may be. *Linn Farms*, 111 Ill. App. 2d 294, 250 N.E.2d 681. There is no requirement that a part of the description of these lots must include this lake for the doctrine to apply. *Linn Farms*, 111 Ill. App. 2d 294, 250 N.E.2d 681.

■ Applying these principles, it is clear that even if the water had receded past the Hasselbrings' property line, the pond is still riparian if it can be shown that the water had previously extended onto the Hasselbrings' property. Evidence was presented that it had. Conflicting evidence was also presented. The trial court, as the trier of fact, had the opportunity to evaluate the credibility of the witnesses and make the proper factual determination. The court heard testimony from David Tyson that the bank of the pond extended several feet onto the Hasselbrings' property and from Leland Hasselbring and Mike Balding that the pond had previously been at higher levels. The court also saw numerous pictures that indicated the edge of the pond had receded. The trial judge's finding was not against the manifest weight of the evidence.

■ As to the Balding property, defendant disputes that Balding in fact owns what he claims to own. The deed Balding acquired in 1985

when he purchased the property contained a legal description which purported to convey approximately 3.5 acres, the southern line of which runs through the northern part of the pond. If that description is accurate it is clear that Balding has riparian rights in the pond.

Defendant, through extensive testimony by surveyor Bradfield, attempted to portray Balding as having only a wild deed that is out of the chain of title. The trial court found Bradfield's testimony, spanning all three days of the trial, to be confusing. The thrust of defendant's argument seems to be that Balding was the owner of only 1.5 acres of property and that this property does not border on the pond. It is well settled in Illinois that when a conveyance is made in which the metes and bounds description conflicts with the quantity description, the metes and bounds description controls. *Flick v. Kramer*, 151 Ill. App. 3d 836, 503 N.E.2d 811 (1987). Defendant claims that the general rule should not apply because the metes and bounds description is not clear and therefore the quantity description controls. The weight of the evidence, however, indicates that the metes and bounds description was adequate in and of itself, but that the quantity description created the ambiguity. In that case, the metes and bounds controls. So, although some deeds in the sequence purport to convey only 1.5 acres, each conveys the entirety of land described in the metes and bounds description.

Defendant attempts to discredit surveyor Krause's entire testimony because he admitted his survey was incorrect with respect to the true southern line of Lizzio's property. However, Krause only claimed that his survey was correct with respect to the legal description he was given and not that the legal description was ultimately correct. It was not unreasonable for the court to accept the rest of Krause's testimony as an expert witness and base its ruling on that testimony.

It is clear from the testimony, and defendant does not dispute, that if Krause's survey was accepted as correct rather than Bradfield's with respect to Balding's property, then Balding's property borders the pond. It was not unreasonable for the court to so find. The trial judge did not err in finding Balding's property riparian to the pond.

■ Defendant also claims the trial court committed reversible error in allowing David Tyson to give opinions not disclosed in either party's Supreme Court Rules 213(f) and (g) (177 Ill. 2d Rs. 213(f), (g)) answers. As the trial court stated during trial, Tyson was called by defendant, not plaintiffs. Tyson's opinions were given on cross-examination and the subject of the opinions was within the scope of the direct examination. Defendant opened the door and cannot now object to what he found.

■ Defendant also claims plaintiffs' attorney made binding admissions that should have forced the court to dismiss the Hasselbrings' claim. Defendant claims that plaintiffs' attorney admitted the Hasselbrings would lose their claim if surveyor David Tyson's survey agreed with defendant's survey. The trial court found the statements in question to be merely tentative in nature and not binding. We agree and note that plaintiffs' attorney made no admission of any fact relevant to the outcome of the case.

■ Defendant next contends that plaintiffs should be barred from seeking an injunction because of unclean hands. When a party contends that an injunction should not be granted because a party has not come with clean hands, it must be shown that the plaintiff is, in fact, guilty of fraud or bad faith toward those making the contention. *Rosehill Cemetery Co. v. City of Chicago*, 352 Ill. 11, 185 N.E. 170 (1933). The defendant has failed to show that any of either plaintiff's acts amounted to fraud or bad faith.

■ Defendant also claims that the trial court erred in denying the counterclaim seeking to enjoin and eject plaintiffs from her pond and to quiet title to her land. We find that because the issuance of the permanent injunction was proper, dismissal of the counterclaim was correct.

It is unnecessary for us to examine whether the trial court used sections 13—114 and 13—118 of the Code of Civil Procedure (735 ILCS 5/13—114, 13—118 (West 2000)) in error, whether plaintiff Balding's affirmative counterdefenses were improperly used as a basis for the injunction, and whether plaintiffs' acquiescence argument was properly raised because we find that the trial court's ruling was sufficiently supported by the evidence.

We affirm the judgment of the circuit court of Iroquois County imposing a permanent injunction.

Affirmed.

LYTTON, P.J., and BRESLIN, J., concur.